UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) ) | 2:24-CR-00078-DCLC-CRW |
| v. | ) ) | |
| RODNEY PETERSON, | ) ) ) | |
| Defendant. | ) ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Motion to Dismiss the Superseding Indictment as to Him [Doc. 107]. The United States ("the Government") has filed a Response in opposition [Doc. 120]. For the reasons below, Defendant's motion is **DENIED.**

I. **BACKGROUND**

On August 13, 2024, a Grand Jury returned a four count indictment, charging Defendant in Count One with a conspiracy to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846, and 841(a)(1), (b)(1)(A); in Count Two with a conspiracy to distribute 40 grams or more of fentanyl in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B); in Count Three with aiding and abetting his the possession of a firearm in furtherance of drug trafficking offense as charged in count I in violation of 18 U.S.C. § 924(c); and in Count Four with possession of two firearms as a convicted felon in violation of 18 U.S.C. § 922(g)(1) [Doc. 6]. On June 6, 2025, Defendant filed two motions to suppress [Docs. 60, 62]. On July 1, 2025, the Court held an evidentiary hearing on the motions to suppress [Doc. 98].

Before the Court ruled on the motions to suppress, the Government obtained a superseding indictment from the Grand Jury [Doc. 82 (dated July 8, 2025)]. The superseding indictment did not add or remove any charges, but alleged enhanced statutory penalties for Counts I, II, and IV based on his prior criminal convictions [*Id.*] The added allegations raised the mandatory minimum sentences on Counts One and Two from ten years to fifteen years; for Count Four, the indictment alleged Defendant was an Armed Career Criminal, raising the mandatory minimum term of imprisonment from five years to fifteen years [Doc. 107]; *see* 18 U.S.C. § 924(e)(setting the punishment for those who violated 18 U.S.C. § 922(g) and have three previous convictions for a violent felony or a serious drug offense, or both, committed on different occasions from one another, at not less than fifteen years).

On July 18, 2025, after the Government had obtained a superseding indictment, the Court granted one of Defendant's suppression motions and denied the other [Doc. 94]. The Government then finding that it could no longer meet its burden on Counts One through Three moved to dismiss those counts and proceed only on Count Four of the superseding indictment [Docs. 115, 119]. The Court granted the Government's motion and dismissed Counts One through Three, leaving only Count Four to be resolved.

Defendant now moves to dismiss Count Four of the superseding indictment, alleging it was brought about by prosecutorial vindictiveness [Doc. 107]. In support, he argues that the Government had all the information it needed to pursue the enhanced statutory penalties at the time it originally indicted Defendant, but chose to vindictively apply that information to the indictment only after Defendant exercised his constitutional rights to file his two suppression motions.

## II. LEGAL STANDARD

Prosecutors have broad discretion to enforce the law, and absent clear evidence to the contrary, courts presume their decisions to be proper. *United States v. Armstrong*, 517 U.S. 456, 464 (1996). But that discretion is not unfettered; the Due Process Clause of the Fifth Amendment protects criminal defendants from vindictive prosecution by prohibiting prosecutors from making decisions "deliberately based upon the exercise of protected statutory rights." *Bragan v. Poindexter*, 249 F.3d 476, 481 (6th Cir. 2001) (citing *United States v. Adams*, 870 F.2d 1140, 1145 (6th Cir. 1989); *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir. 1991) ("A prosecutor vindictively prosecutes a person when he or she acts to deter the exercise of a protected right by the person prosecuted.")).

A defendant may establish prosecutorial vindictiveness either through demonstrating actual vindictiveness or establishing a "'realistic likelihood of vindictiveness' for the prosecutor's action." *Bragan*, 249 F.3d at 481. Defendant is only arguing that a realistic likelihood of vindictiveness exists [Doc. 107, ¶ 9]. To succeed on this claim, the defendant must prove that: "(1) the prosecutor has some stake in deterring the defendant's exercise of his rights and (2) the prosecutor's conduct was somehow unreasonable." *United States v. LaDeau*, 734 F.3d 561, 566 (6th Cir. 2013) (internal quotations omitted) (citing *Bragan*, 249 F.3d at 482). This is an objective standard, and courts must consider "whether a reasonable person would think there existed a realistic likelihood of vindictiveness, not the defendant's subjective impressions." *United States v. Zakhari*, 85 F.4th 367, 379 (6th Cir. 2023) (internal quotations omitted) (citing *United States v. Andrews*, 633 F.2d 449, 454 (6th Cir. 1980) (en banc)). If a court finds that there is a realistic likelihood of vindictiveness, the burden moves to the government to rebut the finding using objective, on-the-record explanations. *Bragan*, 249 F.3d at 482. If the government successfully

rebuts the presumption, the defendant then must provide evidence that the explanation offered is pretextual and that actual vindictiveness occurred. *Id.*

### III. ANALYSIS

While is undisputed that Defendant exercised his rights by filing two motions to suppress, it is less clear if the prosecutor had a stake in penalizing Defendant's use of those rights. In the pretrial stage, it is hard to establish a presumption of vindictiveness. *United States v. Rosse*, 716 F.App'x 453, 462 (6th Cir. 2017); *see United States v. Goodwin*, 457 U.S. 368, 381 ("There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting."). That is because "a defendant before trial is expected to invoke procedural rights that inevitably impose some 'burden' on the prosecutor," and "[i]t is unrealistic to assume that a prosecutor's probable response to such motions is to seek to penalize and to deter." *United States v. Suarez*, 263 F.3d 468, 479-80 (6th Cir. 2001) (quoting *Goodwin*, 457 U.S. at 381). Motions to suppress are exactly the kinds of routine pretrial motions that "do not generally provide a sufficient basis for vindictiveness." *Zakhari*, 85 F.4th at 381.

Here, however, Defendant's suppression motions were more than routine. His first motion to suppress sought to suppress all evidence from the vehicle stop [Doc. 60]. At stake in the second motion was all evidence found within the motel room, which was, as it turns out, essential to the Government's drug trafficking charges (Counts 1, 2, and 3 of the indictment) [Doc. 62]. If both motions had been granted, the Government's case would have been eviscerated. In *LaDeau* and *Zakari*, the Sixth Circuit held that the prosecutors in each case did have a stake in penalizing the defendants' exercise of their rights following motions to suppress crucial evidence. *LaDeau*, 734 F.3d at 569-70 ("the likelihood that a defendant's exercise of his rights will spur a vindictive prosecutorial response is indexed to the burden that the defendant's conduct has placed on the

4

prosecution."); *Zakari*, 85 F.4th at 382 (finding Zakari's motion to suppress more consequential than routine pretrial motions because "the government would have been highly motivated here to protect the evidence and faced a much tougher trial without it."). The requisite prosecutorial stake necessary to establish a reasonable likelihood of vindictiveness is present here.

But the prosecutor's stake is only half of the analysis, and it must be considered alongside the reasonableness of their actions. *Zakhari*, 85 F.4th at 383. Simply obtaining a superseding indictment is not sufficient for a presumption of unreasonableness. *Suarez*, 263 F.3d at 480. When a superseding indictment adds charges or more severe charges, as here, the potential for vindictiveness arises. *Id.* Yet, the government can counter this concern by showing that the changes were brought based on new evidence. *Id.*; *see Goodwin*, 457 U.S. at 381 ("In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance."). Particularly in multi-defendant, multi-count drug trafficking conspiracies, allowing prosecutors to have broad discretion in charging decisions is "especially important . . . because the government's theory of the case likely evolves as defendants file pretrial motions, make plea deals, and agree to cooperate with the government." *United States v. Brown*, No. 24-5199, 2025 WL 1696167, *4 (6th Cir. June 17, 2025) (holding that the Government's decision to charge the defendant as a career offender after his successful suppression motions over "invaluable" evidence was not an unreasonable exercise of prosecutorial discretion).

The Government provides several justifications for the reasonableness of its actions. It states that before the initial indictment, it "had not yet obtained all the relevant state-court documents about Peterson's prior convictions, much less completed its analysis of whether the statutory sentencing enhancements could and should be applied to him." [Doc. 120, pg. 6]. The

5

Case 2:24-cr-00078-DCLC-CRW    Document 129    Filed 09/26/25    Page 5 of 7
PageID #: 606

Government explains that determining whether prior convictions satisfy the requirements to impose the sentencing enhancements are "often complicated and time-consuming." [*Id*. at pg. 5] Additionally, the Government describes a conversation with Defendant's previous counsel in this case that occurred months before Defendant filed his suppression motions, where the prosecutor stated she was "still figuring out whether the statutory enhancements could legitimately apply to Peterson and that she would likely seek a superseding indictment if she were to conclude that the enhancements were, in fact, applicable to him." [*Id*. at pg. 6]

These are reasonable explanations for why the Government obtained a superseding indictment with the enhanced penalties when it did. Charging decisions based on new evidence "successfully" rebut a showing of vindictiveness. *Suarez*, 263 F.3d at 480. The Government's broad discretion affords it the time needed to carefully consider whether and how statutory penalty enhancements may apply in certain cases, especially in the pre-trial stage. Defendant, at least through his former counsel, knew that harsher penalties remained on the table and the superseding indictment should not have come as a surprise.

Defendant's argument centers on a comparison of this case to *LaDeau*, however there are some key factual differences that justify a different outcome here [Doc. 108, pg. 2]. In *LaDeau*, the Government obtained a superseding indictment only *after* its case was "eviscerated" by the defendant's successful suppression motion. *LaDeau*, 734 F.3d at 569. Because of this, the prosecution in *LaDeau* "was saddled with the prospect of restarting LaDeau's prosecution from scratch." *Id.* The superseding indictment came after a hearing on the motions to suppress, but before the Court ruled on the motions. The Government's case was not – and did not become – eviscerated; Count 4 of the original indictment remained partially viable. While it still had some stake in penalizing Defendant's exercise of his rights in moving to suppress, here the stake was

6

Case 2:24-cr-00078-DCLC-CRW   Document 129   Filed 09/26/25   Page 6 of 7
PageID #: 607

not as significant as it was in *LaDeau*. Additionally, in *LaDeau* the prosecution obtained no new evidence between obtaining the two indictments. Instead, after the court suppressed the evidence, it changed the theory of the case to one with harsher penalties. *Id.* at 571. The Government here received new documents about Defendant's prior convictions after obtaining the initial indictment; documents that were necessary to determine whether the sentencing enhancements applied. The Government did not change the theory of the case but updated the existing charges based on the new information it obtained. The Government acted reasonably in light of this new evidence.

## IV. CONCLUSION

While the Defendant can show that the Government had some stake in deterring the exercise of his constitutional rights following his motions to suppress, he cannot prove that the Government acted unreasonably in obtaining the superseding indictment. So there is not a reasonable likelihood that prosecutorial vindictiveness exists, and Defendant's Motion to Dismiss the Superseding Indictment [Doc. 107] is **DENIED**.

**SO ORDERED:**

s/ Clifton L. Corker  
United States District Judge